[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bryant*, Slip Opinion No. 2022-Ohio-1878.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1878

THE STATE OF OHIO, APPELLEE, *v.* BRYANT, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bryant*, Slip Opinion No. 2022-Ohio-1878.]

*Criminal law—Felony sentencing—When a defendant's outburst or other courtroom misbehavior causes a significant disruption that obstructs the administration of justice, that behavior may be punishable as contempt of court and not with an increased prison sentence—Court of appeals' judgment reversed and cause remanded.*

(No. 2020-0599—Submitted April 14, 2021—Decided June 7, 2022.)

APPEAL from the Court of Appeals for Lake County,

No. 2019-L-024, 2020-Ohio-438.

————————

**STEWART, J.**

{¶ 1} In this discretionary appeal from a judgment of the Eleventh District Court of Appeals, we consider whether the appellate court erred by affirming the trial court's judgment increasing appellant Manson Bryant's prison sentence by six

years in response to Bryant's reaction to the length of a previously imposed prison sentence. We hold that the Eleventh District erred, and we reverse the judgment affirming the trial court's judgment increasing Bryant's sentence. If a defendant's outburst or other courtroom misbehavior causes a significant disruption that obstructs the administration of justice, that behavior may be punishable as contempt of court. *See* R.C. 2705.01. The behavior, however, may not result in an increased sentence for the underlying crime.

## I. The Role of the Judiciary

{¶ 2} Being a trial-court judge is not an easy job. In the criminal-justice context, trial-court judges are tasked with, among other things, (1) hearing the sordid facts of a case, (2) acting as gatekeepers by deciding what evidence is admissible, (3) protecting the federal and state constitutional rights of the accused, (4) determining whether the accused is guilty beyond a reasonable doubt in a bench trial, (5) deciding whether to overturn a jury's finding of guilt when the defense moves for a judgment of acquittal based on insufficient evidence of guilt, and (6) imposing a sentence that fulfills the purposes and principals of sentencing set forth in the Revised Code when the accused is found guilty. Against this backdrop, we expect a lot from trial-court judges. We expect them to (1) provide a safe space for victims who come before the court to tell their stories, (2) have sympathy and compassion for those victims, (3) maintain control over their courtrooms to assure the safety of those in attendance and maintain an atmosphere of respect for everyone who comes into the courtroom, (4) fairly, impartially, and dispassionately mediate disputes between opposing parties over discovery, evidentiary issues, and other litigation matters, and (5) treat those who are accused of crimes and those who are convicted of crimes with courtesy, dignity, and respect. Essentially, we ask trial-court judges to appraise wrongdoing, attribute blame, absolve the innocent, and punish the wrongdoer, all while creating an atmosphere that

facilitates justice and fairness through neutral and careful decision-making. This is no easy task. And like all jobs, it is one that is impossible to do perfectly.

{¶ 3} To have any type of honest and meaningful discussion about why the Eleventh District's judgment should be reversed and Bryant's 28-year sentence vacated—and a 22-year prison sentence reimposed—it is important to acknowledge that the very act of presiding over a criminal case, with all its accompanying pressures and responsibilities, often exacts an emotional toll on the trial-court judge. Even the most experienced, even-keeled, and unflappable trial-court judge is subject, every day, to stressors that may generate a range of emotions. In a perfect world, every trial-court judge would be able to control his or her emotions and not let those emotions get in the way of sound and just decision-making. But we do not live in a perfect world. The best that we can do as a society is to give trial-court judges the tools and support they need to help them productively funnel their emotions and vast powers over the life and liberty of individuals into just outcomes. The best we can do as reviewing courts—because we have a broader perspective on the wide-reaching impacts of individual trial-court decisions and the better position to neutrally evaluate those decisions—is to correct errors in judgment and provide guidance. But to do these things, we need to start by acknowledging what is uncomfortable to acknowledge: that trial-court judges do get offended and angry, that anger clouds judgment, and that clouded judgment often results in unjust outcomes. The record in this case demonstrates that fundamentally, this is what happened when the trial-court judge added an additional six years of incarceration to Bryant's prison sentence after Bryant had an emotional outburst upon being sentenced to 22 years in prison.

## II. Background

{¶ 4} In October 2018, a Lake County grand jury indicted Bryant on seven criminal counts related to his involvement, along with a codefendant, in an armed burglary of an occupied trailer home. Counts One and Two charged Bryant with

aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1) (Count One) and R.C. 2911.11(A)(2) (Count Two). The remaining counts were: Count Three, aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1); Count Four, kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(2); Count Five, abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2); Count Six, having a weapon while under a disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2); and Count Seven, carrying concealed weapons, a felony of the fourth degree, in violation of R.C. 2923.12(A)(2). Each count contained a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04. Counts One through Five included one- and three-year firearm specifications pursuant to R.C. 2941.141 and 2941.145.

{¶ 5} Bryant pleaded not guilty to all counts in the indictment and the case proceeded to a jury trial on Counts One through Five and part of Count Seven. The portion of Count Seven that Bryant elected to have tried to the jury was renumbered to Count Six ("jury-count six"). Bryant waived his right to a jury trial on Count Six and the remaining part of Count Seven, electing to have a bench trial on those counts. The jury found Bryant guilty of Counts One through Five and jury-count six. The trial court found him guilty of Counts Six and Seven.

{¶ 6} The matter proceeded to sentencing on March 1, 2019. The court began the sentencing hearing by explaining the jury's findings of guilt and how it would handle several merger issues. The court merged the two counts of aggravated burglary (Counts One and Two), the abduction and kidnapping counts (Counts Four and Five), and the two counts of carrying a concealed weapon (jury-count six and Count Seven). The court also merged the abduction and kidnapping counts (Counts Four and Five) with the-aggravated robbery count (Count Three) as well as the one-year and three-year firearm specifications for Counts One and Three. After merger, the trial court stated that Bryant would be sentenced on Count

One, aggravated burglary; Count Three, aggravated robbery; Count Six, having weapons while under a disability; and Count Seven, carrying concealed weapons.

{¶ 7} Before sentencing Bryant, the court gave Bryant's attorney, Bryant, and the assistant prosecutor a chance to make a statement. Bryant's attorney began by distinguishing Bryant's conduct from that of his codefendant's, in that Bryant was an "aider and abettor," as opposed to his codefendant, who was the principal actor in the commission of the burglary. Bryant's attorney reminded the court that Bryant's codefendant was sentenced to a 12-year prison term, and the attorney asked the court to sentence Bryant to a 10-year prison term.

{¶ 8} Thereafter, Bryant was given the chance to speak directly to the court. He stated:

> Your Honor, I know you [are] very well aware of my history. I made a lifetime of bad decisions. And those bad decisions has caused pain to a lot of people in my family. For that I am truly sorry. Most of my bad decisions have been driven by my addiction to drugs, and to do whatever I can to continue to get high. My ability to stay clean has me to spend most of my life in prison. There's no way for a person to live—that's no way for a person to live. And it's not how I want to finish my life. Despite the circumstances of my upbringing, I understand that I can't continue to blame others for my actions and my behaviors. I have become jaded towards the legal system. By having this trial, was honest and open eye for me. I have never gone through trial before. I have a new found respect for the efforts of the attorneys, judges, jurors, and goal in living as an, as giving an accused person a opportunity to have a case heard. That's all anyone can ask. I am thankful for the opportunity afforded by the court, by the day in court, and I respect the decision that the

juries has made. I alone have the power to end the cycle of incarceration, and all I ask is for you to give me an opportunity to still make something out of my life, sir. I don't want to die in prison, sir. I'm not a bad person, sir. I do have a drug problem. I've been in front of you multiple times. I respect you. And I respect your decision that you make today.

{¶ 9} After Bryant made his remarks, the trial court allowed the state to present its position regarding Bryant's sentence. The state opposed Bryant's request for leniency, disagreeing that Bryant was merely an aider and abettor in the commission of the offenses. The state also pointed to Bryant's extensive criminal history and previous probation and postrelease-control violations as reasons for imposing a lengthier sentence than the sentence that had been imposed on Bryant's codefendant. The state suggested that an aggregate sentence of at least 20 years in prison would be appropriate.

{¶ 10} Thereafter, the trial court made the following statements:

The Court has considered the record, the oral statements made, the victim impact statements, the trial testimony and evidence, the pre-sentence report from several years ago, the updated criminal history, [the] conference in chambers with counsel and probation, and the statements of [Bryant] and [Bryant's] counsel. The Court has also considered the overriding purposes of felony sentencing pursuant to Revised Code 2929.11 * * * [and] all relevant factors, including the seriousness and the recidivism factors set forth in division's B trough E of Revised Code 2929.12. * * * There's been a rehabilitation failure after previous convictions and delinquency adjudications, and a failure to respond in the past to probation or

6

post release control.  The Court determines that the offenses were committed under circumstances very likely to recur, and the Court determines to make recidivism less likely that the offender shows a certain amount of remorse.

**{¶ 11}** The court then proceeded to sentence Bryant to eight years in prison on Count One, eight years in prison on Count Three, 36 months in prison on Count Six, and 18 months in prison on Count Seven.  The court ordered the sentences for Counts One and Two to be served consecutively to each other, and the sentences for Counts Six and Seven to be served concurrently with each other and with the sentences for Counts One and Three.  The trial court also imposed two consecutive, mandatory three-year prison terms for the firearm specifications attached to Counts One and Three, for an aggregate prison term of 22 years.

**{¶ 12}** Just as the court finished announcing Bryant's sentence, the following exchanged occurred:

> BRYANT:  Fuck your courtroom, you racist ass bitch.  Fuck your courtroom, man.  You racist as fuck.  You racist as fuck.  Twenty-two fucking years.  Racist ass bitch.  (CONTINUED OUTBURST BY DEFENDANT, SWEARING, YELLING, MUCH UNINTELLIGIBLE).
>
> COURT:  Remember when—
>
> BRYANT:  You ain't shit.
>
> COURT:  Remember when I said that you had some remorse?
>
> BRYANT:  You ain't shit.  You never gave me probation.
>
> COURT:  Wait a minute.
>
> BRYANT:  You never gave me a chance.

COURT: When I said that you had a certain amount of remorse, I was mistaken. (DEFENDANT CONTINUES YELLING). The Court determines—

BRYANT: Fuck you.

COURT: The Court determines that maximum imprisonment is needed, so it's eleven years on Count 1 and eleven years on Count 3.

BRYANT: Fuck that courtroom. You racist bitch. You ain't shit. (MALE VOICE SAYING "MANSON" REPEATEDLY). Let me out the courtroom, man. (MORE SHOUTING AND SWEARING).

COURT: So, it's twenty-eight years with credit for two hundred and thirty-one days. Hold on. (DEFENDANT STILL SHOUTING). Does counsel waive your client's presence for the remainder of the advisements I have to give?

DEFENSE COUNSEL: Yes, Your Honor.

COURT: Alright. You can take him. The Court determines that [Bryant] has shown no remorse whatsoever. I was giving him remorse, a certain amount of remorse in mitigation of the sentence. [Bryant] has shown me that he has no remorse whatsoever, and therefore the Court determines that maximum imprisonment is needed.

(Capitalization sic.)

{¶ 13} The sentencing judgment was journalized on March 4, 2019, reflecting an aggregate 28-year prison term that was increased from the original sentence of 22 years.

8

**{¶ 14}** Bryant appealed to the Eleventh District Court of Appeals raising three assignments of error. In his first assignment of error, Bryant argued that the trial court erred when it added six years to his prison sentence because of his courtroom outburst. Bryant argued that although his courtroom misbehavior may have amounted to contempt of court, and may have been punished as such, it was error for the trial court to punish such conduct by adding six additional years onto his sentence for the underlying crimes. He argued that his statements did not amount to a showing of no remorse for his crimes but rather were a verbal attack on the trial court.

**{¶ 15}** Relying on its earlier decision in *State v. Thompson*, 2017-Ohio-1001, 86 N.E.3d 608 (11th Dist.), in which it upheld a similar sentence increase by the same trial court under similar circumstances, the court of appeals rejected Bryant's argument. It began by explaining that at the time the trial court increased Bryant's sentence, the sentence was not yet final because it had not been journalized. Accordingly, the court of appeals determined that the trial court was not prohibited from revisiting Bryant's sentence following his outburst. The court of appeals then explained that the trial court "could" have construed Bryant's behavior "as a sign that his previous statements of remorse and contrition were not genuine." 2020-Ohio-438, ¶ 24. The court of appeals qualified that statement, however, by noting that Bryant's "sudden verbal eruption [did] not necessarily reflect a lack of remorse," reasoning that Bryant "could possess deep regret for the crimes he committed and the harm he caused and, at the same time, have a highly negative emotional reaction to the court's sentence." *Id*. The court of appeals rejected Bryant's first assignment of error as well as the remaining two and affirmed his conviction and sentence.

**{¶ 16}** Bryant appealed to this court pro se. We accepted review over one proposition of law: "The trial court erred when it imposed an additional six years on Bryant's sentence after his outburst in court," *see* 159 Ohio St.3d 1468, 2020-

Ohio-3884, 150 N.E.3d 125, and we appointed the Office of the Ohio Public Defender to represent Bryant, *id*. In his merit brief, Bryant, through appointed counsel, restates the accepted proposition of law as follows: "A defendant's disrespect towards the trial court, when done in response to a judicial ruling, is punishable as contempt of court, but does not provide a lawful basis for increasing the defendant's sentence."

{¶ 17} Bryant asserts that the trial court increased his sentence as punishment for disrespecting the court, not because his outburst demonstrated that he had no remorse for his crimes. He argues that although trial courts have a great deal of discretion in fashioning sentences, ultimately, they are constrained by the sentencing factors in R.C. 2929.11 and 2929.12, none of which allow a court to consider a defendant's show of disrespect toward a court when it decides what sentence is appropriate. While Bryant agrees that trial courts are permitted to consider a defendant's showing of "genuine remorse" or lack thereof pursuant to R.C. 2929.12 (D)(5) and (E)(5), respectively, he argues that his outburst may not reasonably be construed as evincing a lack of remorse. At bottom, Bryant's argument is that the trial court's stated justification for increasing his sentence (lack of remorse) was pretextual in nature. He maintains that the real reason the trial court increased his sentence was to punish him for his offensive, in-court behavior and disrespectful attitude toward the court—actions that are not included in R.C. 2929.11 or 2929.12, therefore rendering his sentence contrary to law. Bryant points to both the context and content of the outburst as support for his position that the outburst was in response to the length of his sentence and was not a demonstration of no remorse for his crimes. Specifically, he notes: (1) the outburst immediately followed the trial court's pronouncement of his sentence, (2) that his statements were solely directed at the trial court and had nothing to do with his crimes or the victims, and (3) that his statements reflected his belief that the trial court's sentence was predetermined and racially motivated.

**{¶ 18}** The state takes the position that the trial court had the legal authority to change its previous sentence after Bryant's outburst because, at the time of the outburst, the sentence had not yet been journalized and was therefore not final. The state also argues that the trial court could have construed Bryant's outburst as a sign that his previous statements of remorse and contrition were not genuine and were made from a desire to receive a more lenient sentence.

### III. Analysis

#### A. Reviewability

**{¶ 19}** Prior to oral argument, the state filed a notice of supplemental authority citing this court's recent decision in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649,[1] in which we determined that appellate review of a trial court's sentencing decision under R.C. 2953.08(G)(2) does not permit an appellate court to modify or vacate a sentence based on a lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. Although the state did not mention or otherwise make use of this authority at oral argument, we find it prudent to address the state's apparent suggestion that Bryant's claim may be unreviewable in light of *Jones*. After careful consideration, we find that our review of this matter is not constrained in any way by *Jones*.

**{¶ 20}** A court reviewing a criminal sentence is required by R.C. 2953.08(F) to review the entire trial-court record, including any oral or written statements and presentence-investigation reports. R.C. 2953.08(F)(1) through (4). Although a court imposing a felony sentence must consider the purposes of felony sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12, "neither R.C. 2929.11 nor 2929.12 requires [the] court to make any specific factual findings on the record." *Jones* at ¶ 20, citing *State v. Wilson*, 129 Ohio St.3d 214,

---

1. *Jones* was decided on December 18, 2020, after the close of briefing and prior to oral argument in this matter.

2011-Ohio-2669, 951 N.E.2d 381, ¶ 31, and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

{¶ 21} In *Jones*, the Eighth District Court of Appeals, sitting en banc, vacated the ten-year sentences of parents who had caused the death of their disabled child after finding that the sentences did not advance the overriding purposes of felony sentencing as set forth in former R.C. 2929.11(A), 2011 Am.Sub.H.B. No. 86. *Jones* at ¶ 2-7, 12-15. The issue on appeal to this court in *Jones* was a purely legal one. It concerned only whether appellate review of a trial court's sentencing decision under R.C. 2953.08(G)(2) allowed an appellate court to review the record and modify or vacate a sentence based on its determination that the record did not support the sentencing court's findings under R.C. 2929.11 and 2929.12. Based on the history of the amendments to R.C. 2953.08, this court held that R.C. 2953.08(G)(2) permits a record-does-not-support-the-sentence review only for sentences that are imposed pursuant to certain enumerated statutes, which do not include R.C. 2929.11 or 2929.12. *Jones* at ¶ 35-39. This court determined that R.C. 2953.08(G)(2) does not permit an appellate court to conduct an independent review of a trial court's sentencing findings under R.C. 2929.12 or its adherence to the purposes of felony sentencing under R.C. 2929.11. *See Jones* at ¶ 41-42.

{¶ 22} This case is markedly different from *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649. Unlike the present case, *Jones* did not involve a claim that a trial court's sentencing findings were pretextual. Instead, the question before this court in *Jones* presupposed that a sentencing court would consider and apply the R.C. 2929.11 and 2929.12 sentencing factors, and *only* those factors, in determining what sentence is appropriate under the unique circumstances of each felony case. The narrow holding in *Jones* is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶ 31, 39. Nothing about that holding should be construed as prohibiting appellate review

of a sentence when the claim is that the sentence was improperly imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are " 'otherwise contrary to law.' " *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *Id.* at ¶ 34 quoting *Black's Law Dictionary* 328 (6th Ed.1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

*B. Authority to revise a sentence prior to journalizing the sentence*

{¶ 23} In addition to reviewability, another threshold issue in this case is whether the trial court had the authority to revise Bryant's sentence after orally pronouncing it but before it was entered on the court's journal as a signed sentencing entry. This court has recognized that, as a general rule, a court speaks only through its journal. *Kaine v. Marion Prison Warden*, 88 Ohio St.3d 454, 455, 727 N.E.2d 907 (2000); *Schenley v. Kauth*, 160 Ohio St. 109, 113 N.E.2d 625 (1953), paragraph one of the syllabus ("A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum"). This general rule is also reflected in Crim.R. 32(C), which states:

> A judgment of conviction shall set forth the fact of conviction and the sentence. Multiple judgments of conviction may be addressed in one judgment entry. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the

> judgment and the clerk shall enter it on the journal. A judgment is
> effective only when entered on the journal by the clerk.

This court has further stated that a judgment of conviction is not a final order subject to appeal until the various components of Crim.R. 32(C) are met. *See State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 11. But even though a trial court may revise a sentence prior to its becoming final, the court may do so only for lawful reasons.

*C. A review of Bryant's outburst and the trial court's six-year sentence increase*

{¶ 24} Bryant's angry, profanity-laced tirade was, in no uncertain terms, disrespectful to the court. Not only did Bryant accuse the trial-court judge of being a racist, but he did so using derogatory terms and in open court. As impertinent as this tirade was, however, we agree with Bryant that it is clear from the timing and content of what was said that his outburst was in reaction to the length of his prison sentence. Nothing more.

{¶ 25} To begin, there is no disputing the fact that Bryant's words and statements were directed solely at the trial-court judge who had just sentenced Bryant to 22 years in prison after having sentenced his codefendant to 12 years in prison for the same criminal acts. The sentencing-hearing transcript shows that immediately after hearing the words "22 years," Bryant got upset, cursed at the judge, and accused the judge of being a racist. From start to finish, Bryant's focus never deviated from the sentencing judge as the subject of his ire. The content of Bryant's statements reveal that he was shocked by the length of the prison sentence that the judge had just imposed and believed that the judge should have imposed a lesser sentence so that he could have the opportunity to rehabilitate himself and successfully reenter society. And Bryant's statements did not relate to or address his crimes or the victims in any manner that might indicate a lack of remorse or that any remorse he had shown earlier was negated.

{¶ 26} There is no provision in the sentencing statutes that authorizes a trial court to impose or increase a defendant's prison sentence merely because the defendant had an outburst or expressed himself in a profane and offensive way. And while a defendant's showing of remorse is a sentencing factor to be considered by the trial court when applicable, it is hard to conceive of any honest and logical assessment of Bryant's outburst that could be construed as being motivated by, or evincing, no remorse for his crimes.

{¶ 27} Indeed, it is not clear what exactly Bryant said that made the trial court change its belief that Bryant had shown a "certain amount of remorse" to its belief that Bryant had shown "no remorse whatsoever." The judge never disclosed what aspect or aspects of Bryant's behavior led to this immediate conclusion. And while R.C. 2929.12 does not require a trial court to explain its findings, the total absence of any explanation in the wake of such an immediate and severe sentencing increase raises serious doubts about the trial court's true motivations.

{¶ 28} The court of appeals did not point to any rationale that justified the trial court's decision to increase Bryant's sentence. The best the court of appeals could do was to say that "the [trial] court *could construe* [Bryant's] outburst as a sign that his previous statements of remorse and contrition were not genuine and were more a reflection of his desire to receive leniency." (Emphasis added.) 2020-Ohio-438 at ¶ 24. But this statement does not answer how or why the trial court could logically construe Bryant's outburst as a demonstration of no remorse for his crimes. The court of appeals needed to answer those how-and-why particulars before it could say with any confidence that the increase in Bryant's sentence was not merely retaliatory.

{¶ 29} Additionally, there is a certain incongruity between the findings that the trial court made before and after Bryant's outburst that sheds some light on this case. At sentencing, the court first found that Bryant's pre-outburst statements evinced remorse because Bryant explained that he had a drug addiction, that he

knew he had hurt people, and that he believed he could do better if he were given the chance to rehabilitate himself. Stripping away the profanity and the disrespectful nature of Bryant's outburst, what he said to the trial court after hearing that he was being sentenced to 22 years in prison remained on message with his earlier sentiments regarding his belief that he would be amenable to rehabilitation if he were given a chance to rehabilitate himself. To find then that these sentiments somehow evinced no remorse, when moments earlier those statements, albeit expressed differently, were found to evince remorse, is concerning. The only significant differences between the two expressions are the words used and the way in which the words were conveyed. But what is perhaps most concerning about the trial court's decision to increase Bryant's sentence is that without a moment's reflection, it added an additional six years onto a sentence that had already been imposed.

{¶ 30} At bottom, no matter how one looks at this situation, the statements that Bryant made to the trial court during his allocution and during his outburst were nothing more than a plea for leniency based on his belief that he could be rehabilitated if he were given a chance to overcome his drug addiction. The express purpose behind the sentencing considerations in R.C. 2929.12(D)(5) ("[t]he offender shows no genuine remorse for the offense") and (E)(5) ("[t]he offender shows genuine remorse for the offense") is that they are to be used to help determine whether an offender is likely to commit future crimes. It would be ironic for the trial court to view Bryant's outburst as an indication that he is likely to commit future crimes, which in turn warranted a six-year increase in the sentence in order to protect the public, when the plain purpose behind Bryant's statements was to communicate his disbelief that he received a 22-year sentence, thereby not

affording him a meaningful opportunity to reenter society as a law-abiding citizen after rehabilitation.[2]

{¶ 31} In light of the foregoing, we find that Bryant's sentence was increased by six years for disruptive and disrespectful courtroom behavior. Because neither R.C. 2929.11 nor 2929.12 permit trial courts to consider disruptive or disrespectful courtroom behavior when fashioning sentences that comport with the principles and purposes of felony sentencing, we hold that the increase in Bryant's sentence was contrary to law.

---

2. Several research studies into the psychology of those tasked with imposing punishment have attempted to answer whether punishment decisions are primarily motivated by consequentialist justifications for punishment—that is the aim to produce the best overall consequences for all concerned, such as deterring future harmful conduct—or retributivist motivations for punishment—that is to give wrongdoers what the punisher thinks or feels they deserve based on what the wrongdoer has done. *See, e.g.*, Joshua D. Greene, *The Secret Joke of Kant's Soul*, 3 Moral Psychology 35, at 37, 50, 71 (2008). In summarizing these studies, Greene, a Harvard experimental psychologist who studies retribution, stated:

> When people are asked in a general and abstract way why it makes sense to punish, consequentialist arguments are prominent. However, when people are presented with more concrete cases involving specific individuals carrying out specific offenses, people's judgments are largely, and in many cases completely, insensitive to factors affecting the consequences of punishment. This is so even when the consequentialist rationale for responding to these factors is highlighted and when people are explicitly instructed to think like consequentialists. It seems, then, that consequentialist thinking plays a negligible role in commonsense punitive judgment and that commonsense punitive judgment is almost entirely retributivist * * *, as long as the matter is sufficiently concrete. Moreover, the available evidence, both from self-reports and neuroimaging data, suggests that people's * * * retributivist punitive judgments are predominantly emotional, driven by feelings of anger or "outrage."

(Citations omitted.) *Id*. at 54-55. In essence, as Greene explains, "*[p]eople punish in proportion to the extent that transgressions make them angry*." (Emphasis added.) *Id*. at 51.

These studies provide additional, objective support for the conclusion that the trial court's decision to increase Bryant's sentence likely had nothing to do with the trial court genuinely finding that Bryant displayed no remorse for his actions and was therefore likely to commit future crimes but was instead motivated by a desire to punish Bryant for his transgression, i.e., his offensive outburst.

## IV. Conclusion

{¶ 32} Because a defendant's display of disrespect toward a trial court is not a permissible sentencing factor that the court may consider under R.C. 2929.11 and 2929.12, we conclude that the six-year increase in Bryant's sentence is contrary to law. We therefore reverse the judgment of the Eleventh District Court of Appeals and, pursuant to R.C. 2953.08(G)(2)(b), modify Bryant's sentence to the originally imposed, aggregate, 22-year prison term that the trial court ordered prior to increasing Bryant's sentence by six years. We remand to the trial court with instructions to issue a corrected sentencing entry that reflects this court's decision.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and DONNELLY and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FISCHER and DeWINE, JJ.

_____

**KENNEDY, J., dissenting.**

{¶ 33} This case is not about vindictive sentencing. While it may be about that issue in the minds of the majority, that is not the issue this court accepted. The only question this court accepted is whether a defendant's in-court outburst "is punishable as contempt of court, but does not provide a lawful basis for increasing the defendant's sentence." Majority opinion, ¶ 16.

{¶ 34} The correct answer to that question is: it depends. It depends on the in-court outburst.

{¶ 35} When a defendant has an in-court outburst during a sentencing proceeding, and the defendant's statements not only relate directly to a sentencing finding that the trial court made pursuant to R.C. 2929.12 but also negate support for that finding, the trial court is not limited to simply holding that defendant in contempt of court. The trial court is permitted to consider that in-court outburst in sentencing: here, the in-court outburst directly related to whether appellant, Manson

18

Bryant, had displayed genuine remorse for committing various crimes or whether he was just pretending to have remorse with the hope of receiving a more lenient sentence. *See* R.C. 2929.12(D)(5). And under this court's holding in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, neither this court nor the court of appeals has the authority to review Bryant's increased sentence. Because the majority holds differently, I dissent.

*Bryant's original sentence was not final*

**{¶ 36}** "A criminal sentence is final upon issuance of a final order." *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, 961 N.E.2d 671, ¶ 11. A judgment of conviction is a final order when it sets forth (1) the fact of the conviction; "(2) the sentence; (3) the signature of the judge; and (4) [is entered] on the journal by the clerk of court." *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.32d 163, syllabus, *as modified by State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus.

**{¶ 37}** In this case, when the trial court reconsidered the R.C. 2929.12(D)(5) ("The offender shows no genuine remorse for the offense") and (E)(5) ("The offender shows genuine remorse for the offense") sentencing factors, found that Bryant's in-court outburst negated its prior finding that Bryant had exhibited genuine remorse, and increased Bryant's aggregate sentence, Bryant's judgment of conviction was not yet final. Therefore, because the trial court had the authority to modify Bryant's original sentence, the increased sentence is not contrary to law.

*Criminal-sentencing considerations*

**{¶ 38}** In sentencing an offender, a trial court is guided by two statutes, R.C. 2929.11 and 2929.12. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 36-37, *abrogated on other grounds by Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). R.C. 2929.11(A) provides that the trial court "shall be guided by" the overriding purposes of felony sentencing, which

include "protect[ing] the public from future crime by the offender and others [and] punish[ing the offender." R.C. 2929.11(B) provides that a felony sentence "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing" and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." And R.C. 2929.11(C) provides that a sentence "shall not [be] base[d] * * * upon the race, ethnic background, gender, or religion of the offender."

**{¶ 39}** R.C. 2929.12(A) grants the trial court discretion "to determine the most effective way to comply with the purposes and principles of sentencing set forth" in R.C. 2929.11. "In exercising that discretion, the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the conduct, the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism, * * * and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing." *Id.*

**{¶ 40}** And as stated in R.C. 2929.12(D)(5), when determining a defendant's likelihood to commit future crimes, the trial court "shall" consider whether the defendant shows "no genuine remorse." Conversely, the trial court "shall" also consider whether the defendant shows "genuine remorse" when determining whether he is unlikely to commit future crimes. R.C. 2929.12(E)(5).

*Appellate courts' general authority to review sentences*

**{¶ 41}** Article IV, Section 3(B)(2) of the Ohio Constitution provides courts of appeals with jurisdiction to "review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." "But the General Assembly—and the General Assembly alone—has the authority to provide by law the method of exercising that jurisdiction." *In re M.M.*, 135 Ohio St.3d 375, 2013-Ohio-1495, 987 N.E.2d 652, ¶ 21, citing *Cincinnati Polyclinic v. Balch*, 92 Ohio St. 415, 111 N.E. 159 (1915), paragraph one of the

syllabus. Therefore, the scope of our review of a felony sentence is generally confined to what the General Assembly has authorized. The legislature has thoroughly defined "the parameters and standards—including the standard of review—for felony-sentencing appeals" in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21. Therefore, an appellate court's authority to review a sentence is limited by R.C. 2953.08. *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, at ¶ 27.

*R.C. 2953.08(G)(2) defines the limitations of appellate-court review*

**{¶ 42}** R.C. 2953.08(G)(2) provides that an appellate court "shall review the record, including the findings underlying the sentence or modification given by the sentencing court" and may modify or vacate a sentence if it clearly and convincingly finds either:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any is relevant; or

(b) That the sentence is otherwise contrary to law.

**{¶ 43}** This court recently interpreted R.C. 2953.08(G)(2) in *Jones*. And in *Jones*, this court made two important points in its comprehensive analysis of the evolution of R.C. 2953.08(G)(2). *See Jones* at ¶ 33-37. First, at the time that R.C. 2953.08 was enacted in 1995, the term "otherwise contrary to law" in former R.C. 2953.08(G)(4), Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7565, was defined as " 'in violation of statute or legal regulations at a given time,' " *Jones* at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990), and "meant something other than an appellate court finding that the record does not support a sentence. This is because such a finding would have fallen under the provision permitting the

appellate court to vacate a sentence if 'the record does not support the sentence,' " *id.* at ¶ 38, quoting former R.C. 2953.08(G)(1), 146 Ohio Laws, Part IV, at 7564. Second, since R.C. 2953.08 was first enacted, the legislature has not expanded or modified the term "otherwise contrary to law" to include a sentence that is not supported by the record. *Jones* at ¶ 38. This is evident in the General Assembly's amendment to R.C. 2953.08(G) in 2000, when it enacted the narrower provision under which "an appellate court's authority to modify or vacate a sentence is limited to situations in which it concludes that the record does not support the sentencing court's findings under certain specified statutes, not including R.C. 2929.11 and 2929.12," *Jones* at ¶ 37, while leaving unchanged the otherwise-contrary-to-law provision, which currently remains in R.C. 2953.08(G)(2)(b), *id.*; Sub.H.B. No. 331, 148 Ohio Laws, Part I, 3414, 3418-3420. Therefore, we concluded that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 39.

*The trial court's finding that Bryant's in-court outburst*
*showed a lack of genuine remorse is not subject to appellate review*

{¶ 44} After Bryant's allocution, the trial court made specific findings on the record, including that Bryant had demonstrated genuine remorse. *See* R.C. 2929.12(E)(5). After Bryant's in-court outburst, however, the trial court revisited that finding and increased his aggregate sentence. *See* R.C. 2929.12(D)(5).

{¶ 45} As discussed above, under R.C. 2929.12(D) and (E), the trial court was required to consider whether Bryant was or was not remorseful. And because of the limitation on this court's appellate authority, we may not review those findings to determine whether the trial court erred in reaching that conclusion. *See Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649.

*The majority relies on an argument Bryant never raised:*

*"retaliatory sentencing"*

**{¶ 46}** The majority concludes that it is "not constrained in any way by *Jones*." Majority opinion at ¶ 19. And it states that "[u]nlike the present case, *Jones* did not involve a claim that a trial court's sentencing findings were pretextual." *Id*. at ¶ 22. The majority reasons that:

> Nothing about [the] holding [in *Jones*] should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was improperly imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are ' "otherwise contrary to law.' "

*Id*. at ¶ 22, quoting *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b).

**{¶ 47}** But the problem with categorizing the trial court's R.C. 2929.12 sentencing findings as "pretextual" or based on "impermissible considerations" that fall outside the permissible considerations in in R.C. 2929.11 and 2929.12, is that it requires the majority to do what this court expressly prohibited courts from doing in *Jones*—reviewing (on an appellate level) the trial court's R.C. 2929.11 and 2929.12 sentencing findings and deciding whether it agrees with those findings.

**{¶ 48}** What is more problematic is that the majority reviews Bryant's in-court outburst. The majority writes:

> And while a defendant's showing of remorse is a sentencing factor to be considered by the trial court *when applicable*, it is hard to

conceive of any honest and logical assessment of Bryant's outburst that could be construed as being motivated by, or evincing, no remorse for his crime.

(Emphasis added.)  Majority opinion at ¶ 26.

**{¶ 49}** How does the majority get there?  No one knows.  The majority does not find that the trial court's finding of remorse was wrong.  So, is the majority stating that the trial court's original finding of remorse was erroneous and, consequently, that Bryant's in-court outburst did not matter for sentencing purposes?  Or is the majority stating that the trial court's original finding of remorse was proper and that Bryant's in-court outburst just does not contradict that finding?

**{¶ 50}** In my view, what actually motivates the majority's judgment is its belief that the sentencing judge could not separate his obligations as a judge from his personal feelings about Bryant after Bryant's in-court outburst.  The majority explains:

[W]e need to start by acknowledging what is uncomfortable to acknowledge: that trial-court judges do get offended and angry, that anger clouds judgment, and that clouded judgment often results in unjust outcomes. The record in this case demonstrates that fundamentally, this is what happened when the trial-court judge added an additional six years of incarceration to Bryant's prison sentence after Bryant had an emotional outburst upon being sentenced to 22 years in prison.

*Id*. at ¶ 3.

**{¶ 51}** But there is nothing in the record to suggest that the trial court erred. The record is devoid of any evidence indicating that the trial court engaged in either a shouting match or a heated exchange with Bryant. The trial court simply stated, "Remember when I said that you had some remorse? * * * When I said that you had a certain amount of remorse, I was mistaken. (DEFENDANT CONTINUES YELLING)." (Capitalization sic.)

**{¶ 52}** What the majority actually believes is that the increase in Bryant's sentence had nothing to do with the sentencing factors but was in fact "*retaliatory*" based on his in-court outburst. (Emphasis added). Majority opinion at ¶ 28 The problem with the majority's analysis, however, is that Bryant never alleged or argued that the sentence was retaliatory. And his brief never cites any case law on the issue of retaliatory sentencing. Therefore, his argument that an in-court outburst may be punishable only as a contempt-of-court sanction may not be construed to assert a retaliatory-sentence challenge.

**{¶ 53}** The process of judicial review depends on the parties to identify, preserve, and present issues for appeal. *See Sizemore v. Smith*, 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2 ("justice is far better served when [this court] has the benefit of briefing, arguing, and lower court consideration before making a final determination"). This court is "not obligated to search the record or formulate legal arguments on behalf of the parties, because ' "appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." ' " (Brackets added in *Bodyke*.) *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and

dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983).

{¶ 54} Because the majority is convinced that the trial court acted in retaliation when it increased Bryant's aggregate prison term, it has written Bryant's brief, pronounced itself convinced by the very issue that it has researched and written, and ruled in Bryant's favor. *See Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir.2013) (an appellate court "cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor" when a party fails to raise a particular argument). This is not how our "adversarial system of adjudication works." *Id*.

*Conclusion*

{¶ 55} The legislature gives trial courts the discretion to impose a sentence after considering various sentencing factors pursuant to R.C. 2929.11 and 2929.12. In this case, it was in the discretion of the trial court to determine whether Bryant had expressed remorse and whether that remorse was genuine. *See* R.C. 2929.12(E)(5).

{¶ 56} Pursuant to R.C. 2953.08(G)(2), the General Assembly has limited the authority of appellate courts to review a felony sentence and does not afford appellate courts the authority to review a trial court's determination of the R.C. 2929.11 and 2929.12 sentencing factors. Our holding in *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, bears out the limits of appellate review. Because the limited matter before us hinges on whether the trial court erred when it made certain sentencing findings in accordance with R.C. 2929.11 and 2929.12, and because we have no authority to review those findings, I would affirm the judgment of the Eleventh District Court of Appeals. Because the majority decides otherwise, I dissent.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

_____

Charles E. Coulson, Lake County Prosecuting Attorney, and Jennifer A. McGee, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Max Hersch, Assistant Public Defender, for appellant.

_____