[Cite as *State v. Chapman*, 2023-Ohio-2108.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. CT2022-0067 |
| | : | |
| CHAD CHAPMAN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Muskingum County
                               Court of Common Pleas, Case No.
                               CR2021-0596

JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT ENTRY:        June 23, 2023

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

RON WELCH                                  CHRIS BRIGDON
MUSKINGUM CO. PROSECUTOR                   8138 Somerset Rd.
JOHN CONNOR DEVER                          Thornville, OH 43076
27 North Fifth St., P.O. Box 189
Zanesville, OH 43702

*Delaney, J.*

{¶1} Appellant Chad Chapman appeals from the August 29, 2022 Entry of the Muskingum County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following evidence is adduced from the record of appellant's jury trial.

{¶3} Appellant is the former brother-in-law of John Doe, the victim in this case. The two have known each other for several years. On September 23, 2021, appellant's ex-wife was in jail and appellant was staying at her house on Spruce Street in Zanesville, taking care of her dogs.

*Neighbor sees man beaten and calls 911*

{¶4} Sometime after 11:00 p.m., a Neighbor near the house in Spruce Street was awakened by yelling outside. Neighbor looked out her window and saw appellant, whom she recognized, repeatedly hitting a man sitting on the sidewalk. The man "just sat there" and did not hit appellant. Neighbor watched as the man got up, walked to a vehicle, and attempted to get in. The man fell out of the car, flat into the street, striking the asphalt so hard Neighbor could hear it. She didn't know if he was still alive because he laid completely still. Neighbor called 911 twice and police arrived within 5 minutes of the second call. When asked on cross-examination about the "fight" she observed, Neighbor maintained this was not a "fight;" appellant repeatedly struck the man but he didn't fight back.

{¶5} Ptl. Bragg of the Zanesville Police Department responded to Neighbor's 911 call and found a white male laying in the street with blood on his face and shirt. The man seemed intoxicated and told Bragg he fell down. Bragg suspected there was more to the

story than a fall because the man appeared to be seriously injured. Bragg asked whether the man was in a fight and he said he didn't remember. An ambulance was called and the man was transported to the hospital.

{¶6} As the ambulance left, appellant came out of his house and spoke to Bragg. He said John Doe was at his house and became highly intoxicated; appellant told him not to leave, but Doe insisted and he fell. Bragg noted appellant also appeared drunk. Bragg was skeptical of appellant's account and photographed the residence. He spoke to Neighbor by telephone because she did not want to be identified and she told him what she saw. Bragg went to the hospital to check John Doe's condition and found him unconscious. A doctor said he had a severe brain bleed.

{¶7} At trial the parties stipulated John Doe was diagnosed with a brain bleed and that his blood alcohol content at the hospital was .206.

*Appellant speaks to Doe's Mother and friend*

{¶8} Chris Zinn is a friend of John Doe's Mother. Mother loaned Doe her car that day to run errands. When he didn't come home at night, Mother was worried. When she woke up the next morning and the car was still missing, Mother asked Zinn to look for Doe. Zinn called Doe's phone twice and the second time, appellant answered. Appellant told Zinn Doe's car was at his house, and Zinn realized appellant had Doe's cell phone for some reason.

{¶9} Zinn and Mother went to appellant's house, together, to look for Doe and to retrieve the car keys and cell phone. Appellant let them in and said he and Doe fought over a dog and Doe was presently in the hospital. Zinn asked why and appellant said "I had to beat him down." Appellant further stated he and Doe got into a fight; he dragged

Doe out front and beat him "within an inch of his life;" Doe was unconscious when appellant left him in the street; and Doe was likely in the hospital because an ambulance came. Zinn and Mother collected Doe's keys, wallet, and cell phone from appellant and left for the hospital, where they found Doe beaten black and blue.

*John Doe remembers little*

{¶10} John Doe testified that around 11:00 p.m. on September 23, 2021, appellant called and asked him to bring over some bread. Doe complied and he and appellant started drinking beer. Doe remembered appellant shoving him inside the house, but doesn't remember anything else other than appellant beating him. Doe denied breaking appellant's phone, kicking a dog, and kicking down the door of the house. He denied attacking appellant in any way and only recalled that he was beaten and woke up in the hospital. When shown photos of two doors of the residence, both broken in, Doe said the doors were broken before his sister went to jail and appellant had kicked in one of the doors previously. Doe acknowledged he has a conviction for falsification.

*Appellant's testimony: self-defense*

{¶11} Appellant was the sole defense witness. He denied asking John Doe to bring bread to the residence and said Doe just showed up and started drinking appellant's beer. The two listened to music from appellant's phone and shared a joint. Appellant said Doe asked him for money and when appellant refused, Doe "flipped." Appellant said Doe tried to break his cell phone in half, kicked a dog, and threatened him. Appellant testified Doe drug him outside the house and was "swinging on him." Appellant said he hit Doe a few times and then he "managed to shut the door and lock it." T. 224. Appellant further stated Doe landed several blows on him outside and he swung back only to defend

himself, two or three times, "[l]ong enough for [him] to get away from [Doe]." T. 224. At some point, Doe struck appellant in the ribs with a rock.

{¶12} According to appellant, Doe remained outside and he put his keys, wallet, and cell phone on a table, hoping Doe would leave. Instead, Doe forced his way back in by kicking in the back door.  When shown a photo of the broken door jamb, appellant said Doe was responsible for the damage that night.

{¶13} After Doe kicked the door in and re-entered the residence, appellant testified, the two fought and Doe verbally threatened repeatedly to "kick his ass." Appellant stated he was only trying to get away from Doe, and Doe fell a few times out back and a few times out front of the house.  Appellant was able to get back in the house after Doe fell in the front. When asked whether he called 911, appellant testified he couldn't because Doe broke his phone.

{¶14} Upon cross examination, when asked why he told Bragg Doe was intoxicated and he told him not to leave, appellant said "Must have been mistaken."  T. 234.  When asked why he changed his story when confronted with Neighbor's statement to police, appellant insisted he was simply defending himself from Doe.  Further, appellant testified Zinn lied about appellant's admissions that he beat John Doe.

*Indictment, trial, conviction and sentence*

{¶15} Appellant was charged with one count of felonious assault pursuant to R.C. 2903.11(A)(1), a felony of the second degree. Appellant entered a plea of not guilty and the matter proceeded to trial by jury. Appellant moved for judgments of acquittal at the close of appellee's evidence and at the close of all of the evidence; the motions were

overruled. Appellant was found guilty as charged and the trial court sentenced him to an indefinite prison term of 7 to 10.5 years.

{¶16} Appellant now appeals from the sentencing entry of the trial court.

{¶17} Appellant raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶18} "THE PROPORTIONALITY OF THE SENTENCE WAS INCONSISTENT WITH THE PRINCIPLES SET FORTH IN O.R.C. 2929.11 AND FACTORS TO BE CONSIDERED IN O.R.C. 2929.12."

## ANALYSIS

{¶19} In his sole assignment of error, appellant argues he received a disproportionate sentence in violation of R.C. 2929.11 and R.C. 2929.12.[1] We disagree.

{¶20} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31. Subsection (G)(2) sets forth this court's standard of review:

(2) The court hearing an appeal under division (A), (B), or (C)

of this section shall review the record, including the findings

---

[1] In one portion of the brief, appellant's sole assignment of error is framed as, "The proportionality of the sentence was inconsistent with the principles set forth in ORC and factors to be considered in ORC 2929.12." In the statement of the assignment of error, the error is framed as follows: "Should this court reverse the trial court's decision to impose a seven year indefinite sentence on Count 1, felonious, because the sentence was in contravention of the sentencing statutes R.C. 2929.11, R.C. and a violation of the Appellant's United States Constitution Sixth Amendment Right." (*Sic*).

underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶21} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶22} "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant

within the permissible statutory range.' " *State v. Morris*, 5th Dist. Ashland No. 20-COA-015, 2021-Ohio-2646, ¶ 90, quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶ 36.

{¶23} There is no dispute that the trial court's sentence is within the statutory ranges for a felony of the second degree. R.C. 2929.14(A)(1)(2). Appellant argues his sentence is unfairly disproportionate because he was originally offered community control, he was "taxed" for trying the case, and John Doe's testimony was not credible.

{¶24} He argues the proportionality of his sentence was inconsistent with the principles set forth in R.C. 2929.11. R.C. 2929.11 governs the overriding purposes of felony sentencing and states the following in pertinent part:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

{¶25} R.C. 2929.12 governs factors to consider in felony sentencing and states the following in pertinent part:

(A) Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

{¶26} R.C. 2929.11 does not require the trial court to make any specific findings as to the purposes and principles of sentencing. Likewise, R.C. 2929.12 does not require

the trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). Therefore, although there is a mandatory duty to "consider" the relevant statutory factors under R.C. 2929.11 and 2929.12, the sentencing court is not required to engage in any factual findings under said statutes. *State v. Bement*, 8th Dist. Cuyahoga No. 99914, 2013-Ohio-5437, ¶ 17; *State v. Combs*, 8th Dist. Cuyahoga No. 99852, 2014-Ohio-497, ¶ 52. "The trial court has no obligation to state reasons to support its findings, nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *State v. Webb,* 5th Dist. Muskingum No. CT2018-0069, 2019-Ohio-4195, ¶ 19.

{¶27} As stated by the Supreme Court of Ohio, R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at 42.

{¶28} The Supreme Court of Ohio recently clarified the *Jones* opinion as follows:

> The narrow holding in *Jones* is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶¶ 31, 39. Nothing about that

holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are " 'otherwise contrary to law.' " *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *Id.* at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

*State v. Bryant,* 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22.

{¶29} Appellant argues appellee originally offered a term of community control and his prior felony conviction was more than 20 years old; therefore, appellant argues, appellee must have agreed that he was not a present threat to the community. Appellant further implies that the resulting sentence is essentially a "jury tax" because he took the case to trial.

{¶30} The record demonstrates the trial court received and reviewed the presentence investigation report, and heard statements from the prosecutor, defense

counsel, and appellant. The trial court reviewed appellant's criminal history.  The trial court made the following statements:

> * * * *.
>
> As you are well aware, the Court was here and heard the trial. You were convicted at jury trial of the one count in this case, which is felonious assault, a felony of the second degree.
>
> Upon review of this [PSI], the Court would indicate that back in '99 you had a Class D felony over in Indiana, which they placed you on 18 months in prison, one-year probation, 12 months of—or suspended on the prison sentence. You were sent back to Ohio where you were on community—yeah, community control at the time of committing that for a vandalism charge and unauthorized use of a motor vehicle. When you got back here, your probation—or community control was revoked. You were sent to prison—back to prison from here.
>
> And your misdemeanor record is full of violation of temporary protection order, violation of protection order, assault, domestic violence that was dismissed, carrying a concealed weapon, served time for fighting, possession, possession, possession, public intox, all the way through.
>
> And if I remember correctly, you've had 12 suspensions of your driving record, most of those involving, I believe, under physical control of influence, or something along those lines. (*Sic*).

So all of a sudden you need help. It should have happened about 20 years ago, or 15 years ago, or 10 years ago, or 16 years ago. It didn't. So here we are again.

The victim in this case suffered damage, and that damage, besides the brain bleed and concussion and marks and scrapes, all witnessed by a neighbor. When the officer arrived, he said that did not happen from falling out of the vehicle. But the story from your end kept changing. I think that was part of what the jury probably considered, myself.

Therefore, in regards to the one count, the Court is going to impose a seven-year sentence, with 22 days of credit applied towards that sentence.

* * * *.

T. 7-8.

{¶31} In its sentencing entry, the trial court indicated it considered "the principles and purposes of sentencing under Ohio Revised Code R.C. 2929.11 and its balance of seriousness and recidivism factors under Ohio Revised Code R.C. 2929.12." The trial court sentenced appellant to a term within the statutory range and appellant has not demonstrated that the trial court imposed the sentence "based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12." *State v. Cottrell*, 5th Dist. Muskingum No. CT2022-0061, 2023-Ohio-1391, ¶ 21, citing *Bryant, supra.*

{¶32} Appellant's sentence is neither excessive nor shocking. See, *State v. Cottrell*, 5th Dist. Muskingum No. CT2022-0061, 2023-Ohio-1391. Further, a defendant is guaranteed the right to a jury trial by the Sixth and Fourteenth Amendments to the United States Constitution. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Implicit in the right to a jury trial is the proposition that a court cannot penalize a defendant if he exercises that right. See, *State v. Hanna*, 5th Dist. Knox No. 01CA000019, 2002-Ohio-2512. Appellant implies the trial court's sentence is a "jury tax" because he took the case to trial after the offer of community control. The trial court's comments supra do not indicate a desire to punish appellant for exercising his right to a jury trial. *Hanna, supra.* Upon our review of the record, we find no support for appellant's assertion that the sentence was imposed as a punishment for taking the matter to trial.

{¶33} We conclude the trial court did not commit error when it sentenced appellant. Upon review, we find that the trial court's sentencing complies with applicable rules and sentencing statutes. While appellant may disagree with the weight given to these factors by the trial judge, his sentence was within the applicable statutory range and therefore, we have no basis for concluding that it is contrary to law. *State v. Elkins*, 5th Dist. Knox No. 22CA000021, 2023-Ohio-1358, ¶ 22. R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39.

{¶34} The sole assignment of error is denied.

**CONCLUSION**

{¶35} Appellant's sole assignment of error is overruled and the judgment of the Muskingum County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.