[Cite as *State v. Armstrong*, 2023-Ohio-3527.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

           Plaintiff-Appellee,

    - vs -

JOSHUA J. ARMSTRONG,

           Defendant-Appellant.

CASE NO. 2022-P-0088

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 00906

# **O P I N I O N**

Decided: September 29, 2023
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul M. Grant*, 209 South Main Street, Eighth Floor, Akron, OH 44308 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Joshua J. Armstrong, appeals his convictions following his guilty pleas to abduction and domestic violence. We affirm.

{¶2} In 2022, an indictment was filed charging Armstrong with one count of abduction, a third-degree felony, in violation of R.C. 2905.02, and one count of domestic violence, a fourth-degree felony, in violation of R.C. 2919.25. As the language of the indictment is at issue in this appeal, we reproduce the relevant portions below. First, the indictment specified the grand jury's findings with respect to the abduction count as follow:

**Joshua J. Armstrong** on or about July 21, 2022, in the County of Portage aforesaid did:

**knowingly, without privilege to do so, by force or threat, remove another from where the other person is found, and/or restrain the liberty of another, to wit: [victim name], under circumstances that create a risk of physical harm to the victim or place [victim name] in fear.**

**Said act being Abduction, a Felony of the Third Degree.**

Contrary to and in violation of Section 2905.02 of the Revised Code of Ohio, and

Contrary to the form and statute in such case made and provided and Against the Peace and Dignity of the State of Ohio.

(Boldface sic.)  Next, the indictment provided the grand jury's findings as to domestic violence as follow:

**Joshua J. Armstrong** on or about July 21, 2022, in the County of Portage, State of Ohio Aforesaid did:

**knowingly cause or attempt to cause physical harm to [second victim name], a family or household member, and the said Gregory F. Aguier (sic.) previously has pleaded guilty to or has been convicted of an offense of domestic violence in violation of Ohio Revised Code Section 2919.25(A), a violation of an existing former municipal ordinance or law of this or any other state of the United States that is substantially similar to domestic violence, or a violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211 [2911.21.1]. or 2919.22 of the Revised Code or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense, to wit: 7/14/2022 Portage County Municipal Court 22CRB1493R**

**Said act being Domestic Violence, a Felony of the Fourth Degree,**

**Contrary to and in violation of Section 2919.25 of the Ohio Revised Code, and**

2

Case No. 2022-P-0088

Contrary to the form of the statute in such case made and provided and Against the Peace and Dignity of the State of Ohio.

(Boldface sic.)

{¶3} Armstrong initially pleaded not guilty but later requested leave to amend his plea to not guilty by reason of insanity, and he moved for a competency determination. The court ordered a competency evaluation and scheduled a competency hearing. On the date assigned for the competency hearing, the case instead proceeded as a change-of-plea hearing, as the parties had entered into a plea agreement. Armstrong amended his plea to guilty on both counts. The trial court accepted the pleas, ordered a pre-sentence investigation report ("PSI") be prepared, ordered Armstrong be evaluated for the Northeast Ohio Community Alternative Program ("NEOCAP") and for Community Assessment & Treatment Services ("CATS"), and set the matter for sentencing.

{¶4} The PSI indicates that CATS offered to accept Armstrong into its residential program. However, at sentencing, the court declined to order CATS placement at that time, and it instead imposed terms of imprisonment of 36 months on the abduction count and 12 months of imprisonment on the domestic violence count, to be served concurrently.

{¶5} In his first assigned error, Armstrong contends:

{¶6} "The court committed reversible and plain error when it accepted Mr. Armstrong's plea when it failed to substantially comply with Crim.R. 11 in violation of Mr. Armstrong's due process rights under the Fifth and Fourth (sic.) Amendments to the United States Constitution and under Art. I, §16 of the Ohio Constitution."

3

**{¶7}** "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "Crim.R. 11 was adopted in 1973, giving detailed instruction to trial courts on the procedure to follow when accepting pleas." *Veney* at ¶ 7. Crim.R. 11 "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975); *see also State v. Nero,* 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990).

**{¶8}** Crim.R. 11(C)(2) provides:

> In felony cases the court may refuse to accept a plea of guilty * * *, and shall not accept a plea of guilty * * * without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against

4

him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶9} "Before accepting a guilty * * * plea, the court must make the determinations and give the warnings required by Crim.R. 11(C)(2)(a) and (b) and notify the defendant of the constitutional rights listed in Crim.R. 11(C)(2)(c)." *Veney*, 2008-Ohio-5200, at ¶ 13.

{¶10} Further, "[w]hen a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." (Citations omitted.) *Dangler*, 2020-Ohio-2765, at ¶ 13. In the context of guilty pleas, the Ohio Supreme Court has noted two exceptions to the rule that a defendant must establish prejudice. *Id.* at ¶ 14-16. First, "[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty * * *, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." (Citation omitted.) *Id.* at ¶ 14. Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Citation omitted.) *Id.* at ¶ 15.

{¶11} Accordingly, "the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶12} Here, at the commencement of the change-of-plea hearing, the following exchange occurred:

5

THE COURT: * * * It's my understanding the Defendant is going to enter a plea today to Count One, Abduction, a Felony of the Third Degree and Count Two, Domestic Violence, a Felony of the Fourth Degree. With that plea, the State of Ohio will concur with the pre-sentence investigation report at the time of sentencing, is asking for a NEOCAP evaluation as well; is that all correct * * *?

[THE STATE]: Yes, Your Honor, that is correct.

THE DEFENDANT: That is not correct.

[DEFENSE COUNSEL]: Wait a minute please.

THE COURT: [Defense counsel], is that your understanding?

[DEFENSE COUNSEL]: Your Honor, it is my understanding. I did go over the plea agreement with my client. I did explain to him that the State is asking for a NEOCAP assessment. We would agree with that. He would concur with the assessment.

However, we would also ask the Court to order a CATS assessment. I think, as the Court is made aware by the competency evaluation, Mr. Armstrong has struggled with his mental health for a considerable amount of time. Really, his entire life. I think CATS would be a better fit because of that. We don't disagree with the State's plea agreement and he did sign that, but we would ask for that additional assessment.

{¶13} Thereafter, the court engaged in the Crim.R. 11 colloquy with Armstrong, which included the following exchange:

THE COURT: Sir, have you been fully advised by [defense counsel] of the Criminal Rule 11(F) Plea Negotiations?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you accept these negotiations as your own?

THE DEFENDANT: Yes, ma'am.

{¶14} On appeal, Armstrong first maintains that the court was required to ask him directly what his understanding of the plea agreement entailed due to Armstrong's initial

6

Case No. 2022-P-0088

dispute with the state's recitation of the agreement. However, as set forth above, Armstrong's attorney clarified that the plea agreement recitation was accurate, but defense counsel added that Armstrong also sought a CATS screening. After defense counsel's statement, Armstrong did not further indicate any issue with the plea agreement as described by defense counsel and affirmatively indicated that he accepted the plea negotiations as his own. Armstrong does not indicate what portion of Crim.R. 11(C) required the court to further inquire as to Armstrong's understanding of the plea agreement.

{¶15} Next, Armstrong maintains that the court created confusion by leading him to believe that he would receive the CATS placement if accepted into the program. In support of his position that the court created "confusion" by its statement, Armstrong relies on statements made by the court at the change of plea hearing:

> THE COURT: * * * I'm going to send you for a pre-sentence investigation through the adult probation department. I will have a NEOCAP evaluation, but a CATS evaluation performed as well. And I know that they have beds immediately. I'll do an expedited pre-sentence investigation report.
>
> * * *
>
> THE COURT: I will do an updated pre-sentence investigation report and we'll try to get this going because if he's accepted into CATS we can get him in there right away.

{¶16} The PSI indicates that CATS offered to accept Armstrong. However, at sentencing, the court imposed the above referenced prison terms and stated that it would entertain a request for judicial release after six months to possibly place Armstrong in the CATS program.

7

Case No. 2022-P-0088

**{¶17}** Although Armstrong argues that the court's statements at the change of plea hearing created "confusion" by indicating that the court would send him to CATS if accepted, these statements occurred after Armstrong entered, and the trial court accepted, the pleas. Armstrong has not demonstrated how the court's statements and actions occurring *after* he entered, and the court accepted, his pleas would negate the knowing, intelligent, and voluntary nature of the pleas.

**{¶18}** Next, Armstrong maintains that it was impossible for him to fully understand the nature of his plea because the indictment failed to set forth the division of the statutes that he was alleged to have violated and because the indictment incorrectly identified the victim and the accused in the body of the second count.

**{¶19}** However, the two counts tracked the language of the relevant divisions of the statutory sections defining abduction and domestic violence. *See* R.C. 2905.02(A)(1) and (A)(2), and R.C. 2919.25(A) and (D)(3).[1] Armstrong has not identified how the failure of the indictment to specify the specific divisions of these statutes undermined his understanding of the charges or the pleas.

**{¶20}** Further, as set forth above, we recognize that the indictment specified different victims in the first and second counts. However, save for the indictment, there

---

1. In his brief, Armstrong contends that the online docket in this case reflects that he pleaded guilty to Division (C) of R.C. 2929.25. That division provides "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." However, the language of the indictment tracks Division (A), which provides "No person shall knowingly cause or attempt to cause physical harm to a family or household member," and Division (D) which pertains to a prior offense. We have located nothing in the record certified on appeal indicating that Armstrong pleaded guilty to Division (C), and our review on appeal is limited to the record. Accordingly, we review the domestic violence conviction pursuant to language used in the indictment, which reflects a charge under R.C. 2919.25(A) and (D).

8

Case No. 2022-P-0088

exists no mention of the victim named in the second count in the record. Further, it is apparent from the face of the indictment that it incorrectly identified a different individual as the offender in the body of the second count.[2]

{¶21} The record contains limited information regarding the factual predicates of the offenses. From the information contained in the PSI, it appears that the victim identified in the first count was Armstrong's girlfriend. On the date at issue, the girlfriend entered her apartment and found Armstrong there, armed with knives, searching for drugs. Armstrong forced the girlfriend to remain in the apartment, and he took her phone. The girlfriend reported that Armstrong threatened her, called her derogatory names, and struck her in the face with an open hand.

{¶22} Due to the absence in the record of any mention of the second victim and due to the internally inconsistent reference to "Gregory F. Aguier" as the accused in the second count, it is reasonable to assume that the substance of the second count of the indictment was copied from a different case and not updated with the correct names of the victim and the accused in the present case.[3] A review of the online records of the trial court confirms as much, as the grand jury returned an indictment against Aguier in 2022, in Portage County Common Pleas Case No. 2022CR00792, charging him with fourth-

---

2. At oral argument, the state acknowledged the mistakes in the indictment and indicated that it will move to amend the indictment after resolution of this appeal.

3. Similar nonfatal clerical errors appear in Armstrong's third assigned error, wherein he references himself as "Mr. Huber," (*see infra* at ¶ 32 and Appt. Brief at pp. iv and 12), as well as in Armstrong's issue for review following his second assigned error in the law and argument portion of his brief, wherein he again references himself as "Mr. Huber." *See* Appt. Brief at p. 7 ("Did the trial court abuse its discretion when it imposed a prison sentence on Mr. Huber instead of a community control sanction?").

Case No. 2022-P-0088

degree domestic violence against the victim named in the second count of the indictment in the present case.[4]

{¶23} Although both parties recognize the inaccuracies in the second count on appeal, there is no discussion in the record as to the mistakes in the indictment. We agree that the indictment inaccurately named the victim and the accused in the second count; however, such inaccuracies do not alter the nature of the domestic violence offense, and Armstrong confirmed that he understood the nature of the offenses at the change-of-plea hearing. Further, such inaccuracies do not relieve Armstrong of demonstrating prejudice. Armstrong does not indicate any portion of the record that demonstrates that he would not have entered his plea if he was made aware of the errors in the indictment. *See Dangler*, 2020-Ohio-2765, at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462, 709 N.E.2d 162 (1999) ("Prejudice must be established '"on the face of the record."'").

{¶24} For the foregoing reasons, Armstrong's first assigned error lacks merit.

{¶25} In his second assigned error, Armstrong maintains:

{¶26} "Trial court imposing a prison sentence on Mr. Armstrong was contrary to law and in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article 1, Section 2 of the Ohio Constitution."

{¶27} Pursuant to R.C. 2929.11(A) and 2929.12(A), "[a] court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing,"

---

4. Judicial notice may be taken of public records that are accessible through the internet. *State ex rel. Harris v. Capizzi*, 2d Dist. Montgomery No. 29278, 2022-Ohio-3661, 199 N.E.3d 31, ¶ 18, *aff'd sub nom. State ex rel. Harris v. Bruns*, Ohio Supreme Court Slip Opinion No. 2023-Ohio-2344, ¶ 18 (July 12, 2023).

Case No. 2022-P-0088

and it "shall consider the factors * * * relating to the seriousness of the conduct" and "to the likelihood of the offender's recidivism."

{¶28} R.C. 2953.08(G) governs our review of felony sentences, and provides, in relevant part, that after an appellate court's review of the record, it "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand * * * if it clearly and convincingly finds * * * [t]hat the sentence is * * * contrary to law." R.C. 2953.08(G)(2)(b); *State v. Meeks*, 11th Dist. Ashtabula No. 2022-A-0060, 2023-Ohio-988, ¶ 11.

{¶29} "A sentence is contrary to law when it is 'in violation of statute or legal regulations' * * *." *Meeks* at ¶ 11, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34. Thus, "'[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.'" *State v. Shannon*, 11th Dist. Trumbull No. 2020-T-0020, 2021-Ohio-789, ¶ 11, quoting *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 74; *see also State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶ 18. The Supreme Court has further held that a sentence is contrary to law if "it is imposed 'based on factors or considerations that are extraneous to those [seriousness and recidivism factors] that are permitted by R.C. 2929.11 and 2929.12.'" *Meeks* at ¶ 11, quoting *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22. "But an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Jones* at ¶ 32.

11

Case No. 2022-P-0088

**{¶30}** Here, Armstrong points to the record to essentially argue that the trial court should have granted him community control and ordered him into the CATS program due to his established mental health conditions and substance abuse issues, which contributed to his offenses. Further, Armstrong maintains that he was "left with the misrepresentation that he would be placed on community control and into the CATS program," based upon the trial court's statements following its acceptance of his pleas, as previously discussed in relation to Armstrong's first assigned error. However, we cannot discern in what way these factors render the sentences contrary to law. Instead, these considerations appear to pertain to the trial court's crafting of sentences within statutory guidelines, and "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones*, 2020-Ohio-6729, at ¶ 42.

**{¶31}** Accordingly, Armstrong's second assigned error lacks merit.

**{¶32}** In his third assigned error, Armstrong argues:

> Mr. Armstrong was denied his right to effective assistance of counsel guaranteed under the Sixth Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution. The trial court erred as a matter of law in sentencing Mr. Huber (sic.) in violation of the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution and Article I, Sections (sic.) 10 of the Ohio Constitution.

**{¶33}** In Armstrong's third assigned error, he argues ineffective assistance of counsel for failing to object to defects in the indictment, and ineffective assistance of counsel and plain error with respect to the trial court's failure to merge the two counts for sentencing. He further argues that the second count in the indictment was void, "as it

12

Case No. 2022-P-0088

did not properly identify the victim nor the defendant." We address these arguments out of order to facilitate our discussion.

{¶34} As set forth in relation to Armstrong's first assigned error, the body of the second count of the indictment incorrectly named a victim and an accused from a separate case. However, "issues relating to the validity of the indictment * * * are waived when a defendant enters a plea of guilty to the indictment." *State v. Feathers*, 11th Dist. Portage No. 2021-P-0004, 2021-Ohio-4137, ¶ 13, citing *State v. Patterson*, 5th Dist. Stark No. 2003CA00135, 2004-Ohio-1569, ¶ 13; *see also State v. Heise*, 8th Dist. Cuyahoga Nos. 108286 and 108776, 2020-Ohio-662, ¶ 13 ("by failing to timely object to the indictment and by pleading guilty to aggravated burglary pursuant to a negotiated plea agreement, we find [the defendant] has waived his right to challenge any alleged defect in the indictment"). Although challenges to a void indictment may be raised at any time, an indictment is void where it sets "'forth facts which in no conceivable form constitute a criminal offense; or if they might constitute an offense, the court issuing the process had no jurisdiction over such offense or the person charged with the offense.'" *Feathers* at ¶ 14, quoting *State v. Snowden*, 11th Dist. Trumbull No. 2021-T-0008, 2021-Ohio-2885, ¶ 14, *citing Brinkman v. Drolesbaugh*, 97 Ohio St. 171, 119 N.E. 451 (1918), syllabus. Such is not the case here. Accordingly, to the extent that Armstrong argues the second count in the indictment was void, his third assigned error lacks merit.

{¶35} With respect to defense counsel's failure to object to the errors in the indictment, we review this issue under the ineffective assistance of counsel analysis established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on such a claim, "a defendant must prove that counsel's

13

performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989); and *Strickland* at 687. "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Davis* at ¶ 10, citing *Bradley* at paragraphs two and three of the syllabus.

{¶36} Here, Armstrong does not indicate how the result of the proceeding would have been different had counsel raised a challenge to the second count of the indictment. As Armstrong recognizes, Crim.R. 7(D) provides that "[t]he court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Here, the mistaken identification of the victim, and the internal inconsistency of the name of the accused, did not alter the name or identity of the domestic violence offense. Armstrong himself could have readily noticed the discrepancy upon being served with the indictment and could have raised the issue with his attorney. Armstrong has not established a reasonable probability that, but for defense counsel's failure to challenge these mistakes in the indictment, the result of the proceeding would have been different. Instead, such a challenge would likely have resulted in amendment of the indictment.

{¶37} Armstrong further argues that defense counsel was ineffective for failing to argue that the offenses should have merged for sentencing purposes. Moreover, he maintains that the trial court committed plain error by failing to merge the offenses.

14

**{¶38}** "'The failure to raise the allied offense issue at the time of sentencing forfeits all but plain error.'" *State v. Bailey*, --- Ohio St.3d ----, 2022-Ohio-4407, --- N.E.3d ----, ¶ 7, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 28. "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *Bailey* at ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). To establish plain error, Armstrong must demonstrate that "'an error occurred, that the error was obvious, and that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial.'" (Emphasis added in *Rogers*.) *Bailey* at ¶ 8, quoting *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66, quoting *Rogers* at ¶ 22; *see also State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52. "The elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention." *Bailey* at ¶ 9, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial[.]").

**{¶39}** R.C. 2941.25 governs the imposition of punishment for multiple offenses:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed

15

separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶40}** Accordingly, "[u]nder R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus.

**{¶41}** "When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *Ruff* at ¶ 26. Here, as previously discussed, the indictment mistakenly identified different victims in the two counts, but the record indicates, and the parties agree, that Armstrong's conduct pertained to only one victim.

**{¶42}** Although the state concedes to the extent that this matter should be remanded for the trial court to assess the issue of allied offenses of similar import, we disagree. The failure of a trial court to conduct a merger analysis on the record does not in itself establish plain error. To the contrary, in *Rogers*, 2015-Ohio-2459, at ¶ 1, the Ohio Supreme Court addressed a certified question of "[w]hether a trial court commits plain error where multiple offenses present a facial question of allied offenses of similar import, yet the trial court fails to determine whether those offenses should merge under R.C. 2941.25 at sentencing[.]" The court answered in the *negative and reversed* "the judgment of the court of appeals that is based on its holding that a trial court has a duty to inquire

16

about allied offenses if the defense fails to raise it at sentencing," and "reinstate[d] the sentences imposed by the trial court." *Id.* at ¶ 3, 6.

**{¶43}** Accordingly, here, despite the state's concession that the matter should be remanded for a merger analysis by the trial court, such a position is inconsistent with *Rogers*.

**{¶44}** Instead, as set forth above, the Ohio Supreme Court has held in the context of plain error with respect to merger, it is incumbent on the defendant to demonstrate that: (1) there was error in failing to merge the counts, (2) the error was obvious, and (3) there is a reasonable probability that, but for the error, the result would have been different. *Bailey*, 2022-Ohio-4407, at ¶ 8.

**{¶45}** Armstrong has failed to demonstrate plain error. As previously set forth, Armstrong forced his girlfriend to remain in the apartment, threatening her with knives, and he also struck her across her face with an open hand. The conduct of restraining the girlfriend's liberty through threats of violence and the separate conduct of striking the victim can support sentences for each offense. Accordingly, Armstrong has not established an obvious error by the trial court in failing to merge the offenses.

**{¶46}** Lastly, because the facts in the PSI indicate that separate sentences could be imposed for these offenses, Armstrong has failed to establish a reasonable probability that the outcome would have been different, and thus has failed to establish the prejudice required under either a plain error or ineffective assistance of counsel claim regarding merger.

17

{¶47} Accordingly, to this extent, Armstrong's third assigned error lacks merit.

{¶48} The judgment is affirmed.

JOHN J. EKLUND, P.J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2022-P-0088