[Cite as *State v. Wilson*, 2024-Ohio-4728.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                       Court of Appeals No.  L-23-1232

    Appellee                                    Trial Court No.  CR0202202553

v.

Carmanetta Wilson                                  **DECISION AND JUDGMENT**

    Appellant                                   Decided:  September 27, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, Carmanetta Wilson, appeals from the September 28, 2023

judgment of the Lucas County Court of Common Pleas convicting her of one count of

obstructing justice and sentencing her to a term of 30 months in prison.  Wilson

challenges her sentence as not clearly and convincingly supported by the record.  For the

reasons that follow, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} On September 13, 2022, the Lucas County Grand Jury indicted Wilson on two counts of obstructing justice in violation of R.C. 2921.32(A)(5), (C)(1), and (C)(4), a third-degree felony (counts 7 and 8). The indictment also charged two others, Dearryl Cornelious and Byron Cleveland, with aggravated murder in violation of R.C. 2903.01(C) and (G) along with several other offenses.

{¶ 3} The charges against all three defendants arose from an incident on February 12, 2022 when Cleveland and Cornelious, who were riding in a Dodge Charger, shot at a second vehicle. The driver of the second vehicle, K.W., was shot several times, and one of the vehicle's passengers, D.E., was killed. D.E. was the 10-year-old niece of K.W. Another child, X.E., who was D.E.'s brother and K.W.'s nephew, was also a passenger in the second vehicle but was not injured. Just before the shooting, K.W. picked up the children from the apartment complex where Wilson lived, and the Dodge Charger began following K.W.'s vehicle as they left the complex.

{¶ 4} While investigating the crime, police discovered that Cornelious's phone records showed several contacts, both before and after the shooting, with a phone number associated with Wilson. The police identified the phone number as Wilson's because Wilson, on a prior, unrelated occasion—less than a month before the February 12th shooting—gave that number to the police, and she was recorded on a police body worn camera doing so. When police questioned Wilson after the February 12th shooting, however, she denied having contact with Cornelious on February 12, denied knowing the

2.

phone number associated with her, and claimed that she did not have a phone. She later admitted she had a phone, though she claimed she did not know her own phone number. Wilson never provided the police with any information about her contacts with Cornelious on February 12.

{¶ 5} Wilson initially pleaded not guilty to the two counts against her, but she withdrew that plea and entered a plea of no contest to one count of obstructing justice in violation of R.C. 2921.32(A)(5), (C)(1), and (C)(4) on September 13, 2023. At the change of plea hearing, the state asserted that Wilson "communicated false statements to Toledo Police officers to hinder the investigation and prosecution of those responsible for the murder, specifically Dearryl Cornelius, who was charged with murder." Following a Crim.R. 11 colloquy, the trial court found Wilson guilty, ordered a presentence investigation, and scheduled a sentencing hearing for September 28, 2023.

{¶ 6} At the sentencing hearing, the trial court first heard a statement from the grandmother of D.E. (who was also the mother of K.W.). During her statement, D.E.'s grandmother accused Wilson of being involved in the shooting.

{¶ 7} Next, the trial court reviewed some of the facts underlying Wilson's proximity to the shooting as follows:

> THE COURT: [Prosecutor], [Wilson's attorney] gave some pretty significant detail with regard to the investigative process and what the detectives had discovered even prior to Ms. Wilson being contacted, but in your working on this case – and I believe it's been alluded to multiple times, that the starting point of that event, the sequence of events, started from the apartment complex, or living complex that Miss Wilson lived at.
>
> [PROSECUTOR]: Yes.

3.

THE COURT: And that is where the male victim driver, who doesn't appear to be attached in anyway to a gang activity, left from with two minor children.

[PROSECUTOR]: Correct.

THE COURT: And based on your work with your – with obviously your investigative tools that work for you, does it happen in a pretty quick sequence of events that the car leaves with the children and the car with the – the car that is connected to the shooting –

[PROSECUTOR]: Yes.

{¶ 8} Following this exchange, Wilson's attorney protested, arguing that Wilson was convicted of obstructing justice, not complicity to murder, and therefore in sentencing Wilson, the court could not consider any statements about Wilson's involvement in the shooting beyond that Wilson lied to the police about not having contact with Cornelious on the date of the shooting. In response, the court had the following exchange with Wilson's attorney:

THE COURT: She's charged with obstructing. With obstructing comes knowledge. Knowledge comes from proximity. Proximity and statement of facts.

So if you somehow want me to separate out an obstruction charge from a subsequent starting event to where it ends in a felony, that would be illogical.

So you can make the argument and make the record, but I – you can't unknow a sequence of events that surround what would be someone potentially obstructing for.

[WILSON'S ATTORNEY]: Correct. Correct.

THE COURT: Okay.

[WILSON'S ATTORNEY]: We're not objecting that she had knowledge.

{¶ 9} Wilson's attorney then requested the court sentence Wilson to community control, pointing to her lack of a prior record, asserting that her family would support her and her two young children, and attributing her actions to her environment. Wilson also spoke and expressed remorse for her actions.

{¶ 10} In response, the court addressed Wilson as follows:

Many times people are here on an obstructing in a criminal situation because they become involved after the fact. And the Court has to weigh a situation. So let's say a young woman like you, you don't know anything is happening on the front end, and people come to you, and the next thing you know you are tagged in by what happens next. And the Court can look at that maybe a different way.

There is no way for me to separate out what you knew or didn't know. You appear somehow connected at the front end. You appear stalwart in your decision to not assist in any way on this case.

…

And I know that the decision I'm going to make doesn't bring a child back, and I don't take it lightly. But somewhere it has to stop. Somewhere there has to be a point where someone is grown up enough in the room to know that you pick up the phone and you call the police and say, these people are leaving my house. I think they're going to hurt somebody.

If you have the strength to stop people before they do it, you do. But most people, if you had any knowledge of something happening or going to happen, you know what our reaction is? To stop it.

I don't know what to do to get through to young women to say, make better choices. Stay away. Put the bar higher. Do something. Because until the women stop accepting the activities of the men it's all free reign out there.

The court then, among other things, stated that it had "considered [Wilson's] record, the oral statements… the victim impact statement that was presented in court, balanced the

5.

principles and purposes of sentencing under 2929.11 and balanced the seriousness and recidivism under 2929.12, and all the factors necessary and set forth in 2929.13B."

**{¶ 11}** Following that recitation, the trial court sentenced Wilson to a 30-month term in prison, ordering that none of the term was mandatory.

## II. Assignments of Error

**{¶ 12}** In Wilson's appeal, she asserts a single assignment of error for review:

> The record on appeal does not support the trial court's imposition of a maximum prison sentence.

## III. Law and Analysis

**{¶ 13}** Pursuant to R.C. 2953.08(G)(2), "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. However, R.C. 2953.08(G)(2) "does not permit an appellate court to conduct an independent review of a trial court's sentencing findings under R.C. 2929.12 or its adherence to the purposes of felony sentencing under R.C. 2929.11." *State v. Reynolds*, 2023-Ohio-2624, ¶ 10 (6th Dist.), quoting *State v. Bryant*, 2022-Ohio-1878, ¶ 21. Accordingly, challenges to sentences based on issues governed by R.C. 2929.11 and 2929.12 are not reviewable and are "subject to summary resolution as a matter of law." *State v. Bowles*, 2021-Ohio-4401, ¶ 9 (6th Dist.), citing *State v. Toles*, 2021-Ohio-353.

6.

{¶ 14} In support of her assignment of error challenging the trial court's imposition of what she mischaracterizes as a maximum sentence,[1] Wilson makes three arguments. First, Wilson contends that the trial court impermissibly imposed a sentence based on uncharged conduct—that Wilson was somehow involved in the shooting—and not solely based on the obstructing offense for which Wilson was convicted. Next, Wilson argues that the sentence should be vacated because the court imposed a lengthier sentence to make an example of Wilson, which Wilson claims is not consistent with the purposes and principles of felony sentencing. Finally, Wilson alleges that the court did not consider mitigating factors, such as Wilson's limited prior record, her completion of house arrest with no violations, and the less serious nature of her conduct in comparison to the conduct of her co-defendants, in imposing her sentence.

{¶ 15} None of these arguments present issues subject to appellate review because they are all governed by R.C. 2929.11 or 2929.12 and Wilson's sentence was within the statutory range for a third-degree felony. *State v. Montez*, 2022-Ohio-640, ¶ 13-14 (6th Dist.). First, even if the trial court considered allegations of conduct for which she was not convicted as Wilson alleges, a trial court may consider uncharged conduct as part of its analysis under R.C. 2929.11 and 2929.12. *See State v. Moore*, 2021-Ohio-3995, ¶ 22

---

[1] Wilson was convicted of violating R.C. 2921.32(A)(5), (C)(1), and (C)(4), a third-degree felony. R.C. 2929.14(A)(3)(b) provides that, for a third-degree felony, the trial court shall impose a "definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months," unless the offense is one of the offenses listed in R.C. 2929.14(A)(3)(a). R.C. 2921.32(A)(5), (C)(1), and (C)(4) is not contained in that list. Accordingly, the maximum sentence the trial court could have imposed in this case was 36 months, and Wilson's 30-month prison term was not the maximum sentence.

7.

(6th Dist.); *State v. Craft*, 2020-Ohio-4494, ¶ 10-11 (6th Dist.), citing *State v. Lanning*, 2020-Ohio-2863, ¶ 17 (6th Dist.).  Next, R.C. 2929.11(A) expressly requires a sentencing court to consider "deterring the offender and others from future crime" in imposing a sentence.  Finally, the court's consideration of mitigating factors falls squarely under the provisions of R.C. 2929.12.  *State v. Mathis*, 2023-Ohio-4006, ¶ 9 (6th Dist.).

**{¶ 16}** Because Wilson has failed to raise an issue subject to this court's review, Wilson's assignment of error is not well-taken.

### IV.  Conclusion

**{¶ 17}** For the foregoing reasons, Wilson's appeal of the September 28, 2023 judgment of the Lucas County Court of Common Pleas is dismissed.  Wilson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                            _____
                                                                    JUDGE
Gene A. Zmuda, J.

Charles E. Sulek, P.J.                          _____
CONCUR.                                                          JUDGE


                                                _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.