[Cite as *State v. Roe*, 2025-Ohio-2501.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                     Court of Appeals No. WD-24-044

    Appellee                               Trial Court No. 2023CR0369

v.

Michael J. Roe                                    **DECISION AND JUDGMENT**

    Appellant                              Decided:  July 15, 2025

* * * * *

Michael H. Stahl, Esq., attorney for appellant.

Paul A. Dobson, Esq., Prosecutor and
David T. Harold, Esq., Assistant Prosecutor for appellee.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Michael J. Roe, from the May 16, 2024 judgment of the Wood County Court of Common Pleas.  For the reasons that follow, we affirm.

## Assignments of Error

Assignment of Error No. 1:  The trial court erred in imposing consecutive sentences, as the record does not clearly and convincingly support the trial court's findings as to R.C. 2929.14(C)(4).

Assignment of Error No. 2: The trial court deviated from R.C. … 2929.11 and 2929.12 in fashioning its sentences and therefore crafted a sentence contrary to law.

## Background

{¶ 2} On August 3, 2023, Roe was indicted with two counts of rape, in violation of R.C. 2907.02(A)(2) and (B), felonies of the first degree.  At his arraignment, Roe pled not guilty.

{¶ 3} On February 28, 2024, Roe entered pleas of guilty to an amended Count 1,  sexual battery, a violation of R.C. 2907.03(A)(9) and (B), a felony of the third degree, as well as an amended Count 2, gross sexual imposition, a violation of R.C. 2907.05(A)(1) and (C)(1), a felony of the fourth degree.  As part of the plea agreement, the State recommended a 36-month cap relating to Count 1, and no recommendation as to Count 2.  The parties stipulated that there were facts sufficient to support a finding of guilt.  The trial court then found Roe guilty.

{¶ 4} Roe appeared for sentencing on May 14, 2024.  Numerous letters were received by the court and made part of the record.  Roe's attorney then addressed the court on his behalf.  Included in her comments was a statement that the prosecution is recommending concurrent sentences.  At the conclusion of Roe's attorney's comments, the prosecutor clarified that, pursuant to the terms of the plea agreement, he recommended a cap to the sexual battery charge, but he was not recommending concurrent sentences.  In fact, he was recommending consecutive sentences.

2.

**{¶ 5}** The victim's mother then gave a victim impact statement on behalf of her son. She explained that her son, and her other children, were close friends with Roe's children, and both families were very close and even "shared holidays and vacations." Because they were so close, when the victim finally told his parents what Roe had done, he did not want to go to the police because he was worried about his friend, his siblings, and Roe's wife. According to his mother, the victim only told when he did because he thought the same thing might have been done to his brother. Because of his concern for others, the victim did not go to the police until he heard from friends that Roe was contacting another student at the high school.

**{¶ 6}** She also testified as to issues the victim had as a result. He did not go to Bowling Green State University, as he had always wanted. Instead, he went away to college and was not successful. "He wouldn't leave his dorm room. … He slept all the time." Also, after he told his parents about Roe's "continued sexual attack he began having grand mal seizures. Upon diagnosis it has been determined that [victim] has stress-induced seizures that are currently uncontrolled by medical intervention." She also commented that victim "is a vacant shell of the man he dreamed of becoming. He has stopped living. Our happy, sarcastic, witty guy is gone and left as an angry lost adult who has given up. We have watched our son choose isolation over living. Some days it's a struggle for [victim] to even shower or comb his hair or get out of bed." She said he is now living "with anxiety, post-traumatic stress disorder and depression."

**{¶ 7}** The victim's mother further disclosed that after her and her husband confronted Roe and his wife, Roe would appear at victim's work.

3.

{¶ 8} At the conclusion of the victim impact statement, the prosecutor said that the family was asking for $1,000 in restitution to cover victim's counseling costs over and above what was covered by insurance. Roe's attorney consented to the restitution amount.

{¶ 9} Roe was given a chance to speak. He apologized, said he took full responsibility, that he was getting help and was in therapy, and he asked for leniency.

{¶ 10} The court then informed Roe of his sexual offender reporting requirements. Afterwards, the court considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors contained in R.C. 2929.12. With respect to R.C. 2929.12, the court made the following relevant comments:

> First of all, in this particular case the seriousness factors present are the physical or mental injury suffered by the victim of the offense due to the conduct of the offender was [sic] exacerbated because of the physical [and] mental condition or age of the victim. I don't think that it can be overly emphasized that this is an individual who was a friend of the family, seen as an adult almost parent figure within that family, the closeness of the families. He knew this child, this person, this victim, from the age of five at least was in his life and at fifteen years old determined that he could consent to a sexual liaison with him. Whatever the motivating factors of that, that is a dangerous situation and it indicates a person who is a danger to people.
> Next, the victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense. There's no question the victim in this case has suffered enormous psychological and, I think, economic harm because of this. It's been shown that he has had an enormous impact based upon these acts, these selfless [sic] acts.
> The Defendant held a public office or position of trust in a community related to the office. That's what is indicated on the presentence report. I don't know that I weigh that completely. I know that there was a position of trust between the Defendant and the victim, and that contributed to the whole situation, and that is the offender's relationship with the victim facilitated the offense. All of these were seriousness considerations that are just and weigh on the Court. And the seriousness and how it affects the victim is a lifetime. The effect on the victim is for life. It can't be underestimated on that.

4.

The Defendant and his letters from his friends indicate a person who is dedicated to his family, a family that needs him in many regards and a family that is reliant on him. So the question remains what does the Court do in regard to this? How . . . does the Court use minimum sanctions that accomplishes [sic] the purposes and also protects [sic] the public from future crime not only by the offender but others? What do others think about doing these acts based upon the Court's sentencing?

Now the State has recommended a total of 54 months with a consecutive sentence of 36, plus 18 months. That seems within the context of the world we live in. Within the Court's world that seems like a reasonable recommendation, but from the victim's standpoint that seems almost unjust and unfair, from the defense standpoint, he's exercised remorse, he's engaged in counseling and he's done so much, he says, to try to address the situation.

So what is the Court to do? The Court recognizes that by imposing a sentence less than four years that that allows the Defendant to have the ability to ask for early release or judicial release after 180 days.

If the sentence is over five years, the Defendant has to serve five years before early release can be granted. The other part that goes into the consideration that I want to say for everybody here because everybody else doesn't know what those considerations are. If the Defendant remains in prison for the entire time on the maximum sentence, he would be released to control under the Adult Parole Authority, which is not as intense as local community control sanction.

So what does that all mean? Judge, what are you saying? Well, if I give him the maximum sentence and he's released at the end of that maximum sentence, he would be under limited control under the Adult Parole Authority. If I give him a maximum sentence and release him early potentially he would be under community control locally. The question is, is five years too long? And that's a hard question to say: is it more appropriate to place the Defendant in for less than five years and release him to be under the control of the probation department?

I put that all out there so that you understand. I want to be transparent with everybody as they consider. The Defendant should know that, the victim should know that. What goes into the considerations.

It would be nice to listen to the victims and say, you're right, the maximum sentence would be appropriate. It would be nice to listen to the Defendant and say, you're right, community control because you've shown that. The Court needs to look at the law and apply the law as it is with all of the considerations.

So I'm going to start out with this. First of all, there is no question that there are multiple offenses in this case. There's also no question in the Court's mind that consecutive sentence[s are] necessary to protect the public from future crime and to punish the offender. I think this is one of the most dangerous of our offenses in our community is the person who is within the life of a young person

and then violates them through sexual acts. And consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public.

Further, at least two of the multiple offenses, and there's two in this case, were committed as part of a course of conduct. It is very clear it was part of a course of conduct. And the harm caused by two or more multiple offenses was so great or unusual, it was [s]o great or unusual because of how it has affected this victim, that no single prison term nor any offenses committed as part of any course of conduct adequately reflects the seriousness of the offender's conduct.

Now, the Defendant acknowledged he has hurt the victim in this particular case, the victim's family, his own family, the community at large, the community of Rossford, a small community which has been significantly impacted by this offense.

Further, I think one of the things I want to point out here is that Defendant presents himself as a good person who is engaged in the community, cares for his family. I believe those are accurate comments. I believe in that regard his actions have shown himself to be that. But his actions have also shown himself to be a person of an amazing amount of harm to another person.

People might sit and ask, why is that? I think sometimes it comes from what we think people are. Are people inherently good or are they inherently bad?

My perspective has always been people are inherently self-interested and self-motivated. They act upon their own self interest. And sometimes that's for good and sometimes that results in bad. That's just a commentary from the court.

{¶ 11} The court then sentenced Roe to 60 months in the Ohio Department of Rehabilitation and Corrections ("ODRC") for Count 1, and 18 months in the ODRC for Count 2, to be served consecutively for a total sentence of 78 months.

{¶ 12} The court issued its judgment entry on May 16, 2024. In it, the court again considered the purposes and principles of sentencing under R.C. 2929.11 and the factors set forth in R.C. 2929.12 and found a prison term to be necessary. The trial court also determined that Roe had committed multiple offenses on different dates which necessitated the imposition of consecutive sentences, finding that "it was necessary to protect the public from future crime of the Defendant and to punish the Defendant," that consecutive sentences were "not

6.

disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public," and that "Defendant committed the offenses as part of one or more courses of conduct and the harm caused by the multiple offenses was so great or unusual that no single prison term for either offense would adequately reflect the seriousness of Defendant's conduct." The judgment entry also reflected a sentence of 60 months for Count 1, and 18 months for Count 2, to be served consecutively.

{¶ 13} Roe appealed.

## Assignment of Error Number 1

{¶ 14} In his first assignment of error, Roe challenges the trial court's imposition of consecutive sentences on the basis that they were not clearly and convincingly supported by the record.

{¶ 15} We review felony sentences under R.C. 2953.08(G)(2). *State v. Purley*, 2022-Ohio-2524, ¶ 8 (6th Dist.). R.C. 2953.08(G)(2) allows an appellate court to increase, reduce, or otherwise modify a sentence, or vacate the sentence and remand for resentencing if the court clearly and convincingly finds that either of the following apply: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code" or (2) "the sentence is otherwise contrary to law." The Ohio Supreme Court has clarified that this requires an appellate court to "have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences," not that the appellate court "have a firm belief or conviction that the record supports

the findings." *State v. Gwynne*, 2023-Ohio-3851, ¶ 15.  The Supreme Court explained that this deferential standard "ensures that an appellate court does not simply substitute its judgment for that of a trial court." *Id.*

{¶ 16} Clear and convincing evidence is defined as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 14, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 17} Here, we consider whether the record does not support the trial court's findings under R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences.  Generally, pursuant to R.C. 2929.41(A), "a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment" unless an applicable exception applies.  The exception at issue here is R.C. 2929.14(C)(4)(b), which reads as follows.

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
> . . .
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the

8.

offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 18} A trial court imposing consecutive sentences must make these findings at the sentencing hearing and incorporate them into its sentencing entry but is not obligated to state reasons supporting its findings. *State v. Bonnell*, 2014-Ohio-3177, syllabus. "However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. at ¶ 29.

{¶ 19} Our review of the record reveals that the trial court made the requisite findings. Roe does not dispute that the trial court made the necessary findings, but rather that these findings are not supported by the record. He contends that Roe did not use physical force, that the "sort of harm described is consonant with anyone who suffers these sorts of offenses" and that therefore Roe "caused harm in the ordinary way one would expect from such a violation." He also disputes the finding that consecutive sentences were necessary to protect the public as the State's recommendation was effectively for a five-year sentence.

{¶ 20} Upon review, we cannot say that the trial court's findings are clearly and convincingly not supported by the record. With respect to the finding of great or unusual harm, the victim's mother described how these offenses affected him, both psychologically and physically, and how it changed the direction of his life. And these changes were also described in letters from the victim himself and other family members. Additional harm was caused by

9.

the fact that the victim's family and Roe's family were so close, and the victim was aware that making this public would hurt both families. Based upon these facts, we cannot say that the trial court's finding of great or unusual harm is not clearly and convincingly supported by the record. Also, we do not find the fact that the State recommended a combined lesser sentence than was issued establishes that the trial court's finding that consecutive sentences were necessary to protect the public from great or unusual harm is not clearly and convincingly supported by the record. The State did argue that consecutive sentences were necessary.

{¶ 21} For these reasons, we find Roe's first assignment of error to be not well-taken.

**Assignment of Error Number 2**

{¶ 22} In his second assignment of error, Roe contends that the trial court deviated from R.C. 2929.11 and R.C. 2929.12 in fashioning his sentences, and therefore his sentences are contrary to law. He also raises two relevant issues he claims are pertinent to this assignment of error. The first issue is whether we can review the trial court's sentences on this basis.

{¶ 23} As we have previously stated, "R.C. 2953.08(G)(2) does not permit an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Alliman*, 2025-Ohio-1490, ¶ 10 (6th Dist.). The Ohio Supreme Court case of *State v. Jones*, 2020-Ohio-6729, "precludes this court from reviewing a felony sentence based solely upon an appellant's contention that the trial court did not properly consider the factors identified in R.C. 2929.11 and 2929.12 when determining an appropriate sentence." *Id.* at ¶ 11. "Moreover, we may summarily dispose of an assignment of error that is based only on the trial

10.

court's consideration of the factors in R.C. 2929.11 and 2929.12." *State v. Eames*, 2024-Ohio-183, ¶ 10 (6th Dist.).

{¶ 24} Roe maintains that this law does not prevent us from reviewing his sentence, citing to *State v. Bryant*, 2022-Ohio-1878, wherein the Ohio Supreme Court stated that ""when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable." *Id*. at ¶ 22.

{¶ 25} Specifically, Roe points to the trial court's statements regarding post-release control being a less harsh sanction than community control, and its statements about the ability to seek judicial release being limited for sentences in excess of five years. Roe contends that these statements "appear to be why the trial court concluded that it needed to not only impose maximum sentences, but impose them consecutively."

{¶ 26} We do not find that these statements are similar to *Bryant*, where, immediately after he was sentenced, the defendant began an "angry, profanity-laced tirade" directed toward the trial judge, and the trial judge then added to the defendant's sentence on the basis of that tirade. The Ohio Supreme Court in *Bryant* found that "[t]here is no provision in the sentencing statutes that authorizes a trial court to impose or increase a defendant's prison sentence merely because the defendant had an outburst or expressed himself in a profane and offensive way." *Id*. at ¶ 26. However, the language referred to by Roe here goes directly to the purposes of sentencing set forth in R.C. 2929.11 - to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using

11.

the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. The trial judge's statements objected to by Roe are clearly in the context of considering R.C. 2929.11 and R.C. 2929.12.

{¶ 27} R.C. 2929.11 provides that a sentencing court "shall be guided by the overriding purposes of felony sentencing" which are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." To achieve these purposes, the statute requires the sentencing court to consider "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.12 states that the trial court has discretion to determine the most effective way to comply with the purposes and principles of sentencing as set forth in R.C. 2929.11, and sets forth factors that are to be considered, including factors relating to the seriousness of the conduct.

{¶ 28} Below, the judge first generally explained R.C. 2929.11 and R.C. 2929.12, then applied them to the instant case, stating that, of the seriousness factors listed in R.C. 2929.12(B), the applicable factors include "the physical or mental injury suffered by the victim of the offense due to the conduct of the offender [which] was exacerbated because of the physical mental [sic] condition or age of the victim"; the victim "suffered serious physical, psychological or economic harm"; Roe "held a public office or position of trust in a community related to the office"; and Roe's "relationship with the victim facilitated the offense." The judge noted letters from Roe

and his friends indicate Roe "is dedicated to his family, a family that needs him in many regards and a family that is reliant on him" and then asked "How . . . does the Court use minimum sanctions that accomplishes [sic] the purposes and also protects [sic] the public from future crime not only by the offender but others?" The comments objected to by Roe regarding early release and post-release control versus community control were made in the context of answering that last question and therefore are within the confines of R.C. 2929.11 and R.C. 2929.12. Thus, pursuant to *Jones*, Roe's argument is not subject to our review. Because this is the case, we cannot consider Roe's second issue relating to whether his sentence was contrary to law.

{¶ 29} Accordingly, Roe's second assignment of error is not well-taken.

## Conclusion

{¶ 30} The judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Roe is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also,* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Christine E. Mayle, J. | |
| | JUDGE |
| Myron C. Duhart, J. | |
| | JUDGE |
| Charles E. Sulek, P.J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.